UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEON VENEGAS JR.,

    Petitioner,

v.

SHANE JACKSON,

    Respondent.

_____/

CASE NO. 1:17-CV-173

HON. ROBERT J. JONKER

## ORDER APPROVING AND ADOPTING
## REPORT AND RECOMMENDATION

The Court has reviewed Magistrate Judge Kent's Report and Recommendation in this matter (ECF No. 16) and Petitioner's Objection to it (ECF No. 18). Under the Federal Rules of Civil Procedure, where, as here, a party has objected to portions of a Report and Recommendation, "[t]he district judge . . . has a duty to reject the magistrate judge's recommendation unless, on de novo reconsideration, he or she finds it justified." 12 WRIGHT, MILLER & MARCUS, FEDERAL PRACTICE AND PROCEDURE § 3070.2, at 451 (3d ed. 2014). Specifically, the Rules provide that:

> The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

FED R. CIV. P. 72(b)(3). De novo review in these circumstances requires at least a review of the evidence before the Magistrate Judge. *Hill v. Duriron Co.*, 656 F.2d 1208, 1215 (6th Cir. 1981). The Court has reviewed de novo the claims and evidence presented to the Magistrate Judge; the Report and Recommendation itself; and Petitioner's Objections. After its review, the Court finds

that Magistrate Judge Kent's Report and Recommendation is factually sound and legally correct and accordingly adopts its conclusion that Petitioner is not entitled to habeas corpus relief.

## PROCEDURAL BACKGROUND

The Michigan Court of Appeals summarized the facts underlying Petitioner's convictions in this case as follows:

> Defendant was charged with domestic violence (third offense), unlawful imprisonment, and witness retaliation, MCL 750.122(8), arising out of a physical altercation with his then girlfriend, Angela Baker. On the date of the altercation, Baker drove defendant to a park. Defendant was drinking alcohol and argued with Baker about leaving the park. According to Baker, defendant grabbed her keys, her keyring broke, and she sustained a cut finger. Roughly two hours later, she and defendant drove to the hospital, where Baker received two stitches for the laceration on her finger. She went to the police department the next day and reported the incident.
>
> During the course of the proceedings below, Baker's testimony about the altercation changed in several respects. At the preliminary examination, Baker denied that defendant put his hands on her during the altercation. She also denied that defendant had threatened her or attempted to influence her testimony in any way. But Baker later admitted that her testimony at the preliminary examination was untruthful. Contrary to her prior testimony, she indicated that defendant had physically assaulted her at the park, threatened her, and prevented her from leaving for several hours, only permitting her to drive to the hospital after she promised she would not call the police. As a result, the prosecution entered an immunity agreement with Baker under MCL 780.701. In exchange for her promise to testify truthfully at trial, Baker was granted immunity regarding her perjurious testimony at the preliminary examination.
>
> At an early pretrial conference, the prosecution informed the trial court that defendant had attempted to use other jail inmates' calling cards to contact Baker, in direct contravention of the district court's order that defendant have neither phone privilege nor any form of contact with Baker. The prosecution played a recording of a phone call between another inmate and the mother of defendant's child; its purpose was to induce the mother to relay information to Baker. As

a result, the trial court revoked defendant's bond and phone privileges.

Defendant was represented by three different appointed attorneys in the trial court, and he made several requests to represent himself. At a bond hearing, defendant asked to represent himself after the trial court denied his request to appoint new counsel. He repeatedly interrupted the trial court and continued to press his arguments after the trial judge had announced her ruling. After ignoring the trial court's instruction for him to remain silent, defendant was held in contempt. While he was being removed from the courtroom, defendant went on a profanity ridden tirade. He cast aspersions at the court and its officers, accused them of racism, and referred to the trial judge as "bitch."

Before trial, the defense sought to subpoena recordings of certain prison telephone conversations between defendant and Baker that took place while defendant was incarcerated in the Ottawa County jail on unrelated charges. At a bond hearing, defendant's appointed counsel informed the court that he was having difficulty serving the subpoena. Defendant requested substitute counsel, contending that his new counsel had done nothing for him and had lied to his family. The trial court denied defendant's request, reasoning that defendant had not shown a breakdown in the attorney-client relationship.

Defendant proceeded to trial twice. At the outset of defendant's first trial, defendant pointed out that counsel had still not obtained the phone calls from Ottawa County. The trial court noted that the parties had discussed the matter and that defense counsel had decided against using the calls on the ground that their content would be prejudicial to defendant. Counsel stated that he understood that in one call Baker stated that the charges in this case were "payback" for defendant's act of wrecking her truck. Counsel acknowledged that such evidence could be viewed as exculpatory, but he contended that other exculpatory evidence existed and stated that evidence that defendant had been incarcerated for other charges would be prejudicial to defendant. Defendant again requested the appointment of substitute counsel. The trial court denied the request. Thereafter, defendant briefly considered representing himself, but he ultimately decided to proceed with counsel.

Following deliberations after the first trial, the jury acquitted defendant of witness retaliation but was unable to reach a verdict on

the remaining charges. At the conclusion of the second trial, a jury convicted him of the remaining charges.

(6/16/16 Mich. Ct. App. Opinion (MCOA Op.), ECF No. 9-19, PageID.703-704). Petitioner was sentenced on December 8, 2014, to 12 to 30 years on the lawful imprisonment conviction, concurrent with 5 to 16 years, 8 months on the domestic violence conviction. (ECF No. 9-18).

Petitioner unsuccessfully appealed his convictions through the state courts. On February 21, 2017, Petitioner filed his habeas petition which raised four grounds for relief, as follows:

> I. The trial court denied Mr. Venegas his constitutional rights to self-representation when it ignored his request to represent himself and foreclosed further discussion of the issue.
>
> II. The trial court improperly denied Mr. Venegas repeated requests for substitute counsel even though he and his appointed counsel had a major strategy disagreement, in that counsel refused to even obtain and review evidence Mr. Venegas wanted to present at trial, and there had been a resulting breakdown in their attorney client relationship.
>
> III. Trial counsel's refusal to obtain, despite Mr. Venegas' pleas, impeachment evidence in a trial that hinged on credibility constituted ineffective assistance of counsel that requires a new trial.
>
> IV. [Petitioner] was denied his state and federal due process rights where his convictions were obtained through the use of false and perjured testimony by the prosecution witness(s), where his rights to a fair trial were protected by the procedural safeguard in paragraph #6 of the immunity agreement the prosecution had with the witness, Angela Baker that her testimony would be truthful and where the prosecution failed to correct those false statements made this issue a serious error that prejudiced the defense and deprived defendant of a fair trial and proves prosecutorial misconduct.

(ECF No. 1-1, PageID.17). On March 5, 2018, the Magistrate Judge recommended denying all four grounds for relief. (ECF No. 16). Petitioner's Objection was filed on March 22 (ECF No. 18) but

4

is dated March 19, 2018. Under the prison mailbox rule, the Court finds Petitioner's Objection was timely filed. Petitioner brings four specific objections–one for each of the four grounds for relief. The matter is ripe for decision.

**PETITIONER'S OBJECTION**

1. **Self Representation**

In his first objection, Petitioner argues the Magistrate ignored both fact and law when he determined Petitioner was not entitled to habeas relief with respect to ground I of the petition. The gravamen of Petitioner's claim is that the Magistrate failed to consider the fact that the presiding judge at his trial had an "unconstitutional blanket-rule" that she did not allow defendants to represent themselves in her courtroom, and that the Magistrate improperly concluded that Petitioner had not unequivocally requested to represent himself. Petitioner's objection is without merit.

First of all, Petitioner's argument that the trial judge had a blanket rule of failing to permit self-representation falls flat based on the simple fact that the same judge, at the beginning of his first trial, extensively discussed whether Petitioner wanted to represent himself during that trial. (ECF No. 9-8, PageID.293-302). The trial judge would not have engaged in such a discussion if that court had the blanket policy that Petitioner complains of. And it was Petitioner, not the state trial court, that decided to continue the first trial with counsel. (ECF No. 9-8, PageID.301).

Notwithstanding the above, Petitioner highlights the following comments from the trial court during his September 18, 2013, arraignment:

> If you want to act as co-counsel with that attorney, you let me know. If you want to help drive the bus, that's fine. But here's how we do it in my courtroom. I don't let you represent yourself. I assign co-counsel. The minute that your bus driven by you goes off into the woods, your co-counsel gets to drive the bus.

(ECF No. 9-4, PageID.235-236). While some of the language used by the trial court could perhaps be seen, at first glance, as a policy preventing a defendant from representing himself at trial, a careful review read in the context of the proceedings shows that the trial court's policy was in fact that it would appoint co-counsel for defendants who wished to represent themselves during trial. The trial court would then permit the defendant to "drive the bus," but would not permit dilatory or obstructionist behavior. All this is consistent with, not contrary to, clearly established federal law. *See McKaskle v. Wiggins*, 465 U.SD. 168, 178-79 (1984) (holding that it was permissible to appoint standby counsel over a pro se defendant's objections); *see also Faretta v. California,* 422 U.S. 806, 835 n.6 (1975) (holding that a "trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct.").

The second portion of this objection is that Petitioner unequivocally requested to represent himself at the start of his second trial. This objection is also without merit. In evaluating Petitioner's direct appeal, the state court of appeals framed the issued around a three-part test:

> The right of self-representation is secured by both the Michigan Constitution, Const 1963, art 1, § 13, and by statute, MCL 763.1. The right of self-representation is also implicitly guaranteed by the Sixth Amendment of the United States Constitution. *People v Anderson*, 398 Mich 361, 366; 247 NW2d 857 (1976). To invoke the right of self-representation: (1) a defendant must make an unequivocal request to represent himself, (2) the trial court must determine that the choice to proceed without counsel is knowing, intelligent, and voluntary, and (3) the trial court must "determine that the defendant's acting as his own counsel will not disrupt, unduly inconvenience and burden the court and the administration of the court's business." *Id*. at 367-368.

(ECF No. 9-19, PageID.705). Applying this test, the court of appeals concluded Petitioner could not meet it because, based on the entirety of the record, the request Petitioner made was not serious. (*Id.* at PageID.705-706).

6

The Magistrate found that this was not an unreasonable application of clearly established federal law, and the Court agrees. *Dunigan*, the case referenced by the court of appeals, derived the three part test from a decision from the Michigan Supreme Court, *People v. Anderson*, 247 N.W.2d. 857 (Mich. 1976), *Anderson*, in turn was rooted in the Supreme Court's decision in *Faretta*. *Id.* at 859. Thus, as the Magistrate concluded, the court of appeals decision was consistent with, not contrary to, clearly established federal law. Moreover, the application was eminently reasonable based upon the entirety of the record. Petitioner's flippant response to the trial court, after previous discussions where Petitioner sought to represent himself only to later retreat from that position, provides ample support for the court of appeals' conclusion that Petitioner's statement to the judge was not serious. Petitioner's first objection is accordingly overruled.

### 2. Right to Counsel / Ineffective Assistance of Counsel

Petitioner's second and third objection both relate to the performance of his counsel for his second trial. The objections may be considered together because Petitioner admits in his third objection that the objection "has basically been addressed previously" through his second objection. (ECF No. 18, PageID.1093). At bottom, in both objections Petitioner contends the Magistrate erred by determining that counsel had made a strategic decision not to pursue discovery and introduce into evidence certain telephone conversations between Petitioner and the victim in this case. The decision could not be strategic, in Petitioner's mind, because his counsel did not obtain and review those calls.

The insinuation that counsel somehow could not make a strategic decision about those jail calls between Petitioner and the victim because counsel had not reviewed those calls is contradicted by the record. While it may be the case that counsel did not acquire those records to the satisfaction

7

of Petitioner, the record demonstrates that counsel was aware of the substance of those calls. The prosecuting attorney, for example, informed the court that he had presented a transcript of those calls to Petitioner's attorney and pointed out parts that were prejudicial against Petitioner to counsel. (ECF No. 9-8, PageID.294). Counsel himself confirmed that to be the case to the court shortly thereafter. (*Id.* at PageID.295).

Counsel's knowledge of the content of these calls, which are accurately described in the Report and Recommendation, demonstrate that the decision not to pursue these calls any further was eminently reasonable. *See Strickland v. Washington*, 466 U.S. 668, 691 (1984) (noting that "[i]n any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."). "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); accord *Clinkscale v. Carter*, 375 F.3d 430, 443 (6th Cir. 2004). Accordingly Petitioner's second and third objections are overruled.

### 3. **Prosecutorial Misconduct**

In his last objection, Petitioner merely states that he objects to the Magistrate's Recommendation that he is not entitled to habeas relief as to ground IV of the petition. Petitioner presents no argument here, and his blanket objection is too vague and general to merit review. An objection that fails to explain and cite the problematic portions of the Report and Recommendation, and that only incorporates by reference arguments raised in previous briefs, is not sufficiently specific to merit consideration. *See Neuman v. Rivers*, 125 F.3d 315, 322–23 (6th Cir. 1997); *see also Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991) ("A general

objection to the entirety of the magistrate's report has the same effects as would a failure to object.").
In any event, the objection also fails on the merits. The Magistrate correctly found that the Michigan courts' determination that Petitioner failed to establish a prosecutorial misconduct claim was entirely consistent with clearly established federal law. For these reasons, Petitioner's fourth objection is overruled.

## MOTION FOR RELEASE ON BOND

On February 8, 2018, Petitioner filed a motion for release on bond pending the disposition of his habeas petition. (ECF No. 13). In *Dotson v. Clark*, 900 F.2d 77 (6th Cir. 1990), the Court of Appeals recognized that, in limited circumstances, a district court may grant bond pending a decision on the merits of a habeas corpus petition. The *Dotson* court indicated, however, that the power to release a petitioner on bond must be exercised sparingly and only in the presence of exceptional circumstances. *Dotson*, 900 F.2d at 79; *see also Lee v. Jabe*, 989 F.2d 869, 871 (6th Cir. 1993). Under *Dotson*, the prisoner seeking release on bond "must be able to show not only a substantial claim of law based on the facts surrounding the petition but also the existence of some 'circumstance making the [motion for bail] exceptional and deserving of special treatment in the interests of justice.'" *Dotson*, 900 F.2d at 79 (quoting *Aronson v. May*, 85 S. Ct. 3, 5 (1964)). The habeas petitioner, who is incarcerated under a presumptively valid criminal conviction, is on a much weaker footing than a pretrial accused or even a convicted defendant waiting appeal. *See Ostrer v. United States*, 584 F.2d 594, 599 (2d Cir. 1978).

Applying the two-prong test in *Dotson*, and for the reasons discussed above, this Court finds neither a substantial claim on the merits of the petition nor exceptional circumstances deserving special treatment in the interest of justice. The motion is denied.

## CERTIFICATE OF APPEALABILITY

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a petitioner may not appeal in a habeas corpus case unless a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). The Federal Rules of Appellate Procedure extend to district judges the authority to issue certificates of appealability. FED. R. APP. P. 22(b); *see also Castro v. United States*, 310 F.3d 900, 901-02 (6th Cir. 2002) (the district judge "must issue or deny a [certificate of appealability] if an applicant files a notice of appeal pursuant to the explicit requirements of Federal Rule of Appellate Procedure 22(b)(1)"). However, a certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

To make this showing, the petitioner must demonstrate that reasonable jurists could "debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 894 (1983)). When a district court rejects a habeas petition on the merits, the required "substantial showing" is "straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484.

In this case, Petitioner has not made a substantial showing of the denial of a constitutional right. Therefore, he is not entitled to a certificate of appealability.

## CONCLUSION

**ACCORDINGLY, IT IS ORDERED** that the Report and Recommendation of the Magistrate Judge (ECF No. 16) is **APPROVED AND ADOPTED** as the opinion of the Court.

**IT IS FURTHER ORDERED** that:

1. Petitioner's Motion for Release on Bond (ECF No. 13) is **DENIED.**

2. The Petition for Writ of Habeas Corpus (ECF No. 1) is **DENIED** and this case is **DISMISSED**.

3. Petitioner is **DENIED** a certificate of appealability. *See Slack v. McDaniel*, 529 U.S. 473 (2000).

A separate Judgment shall issue.

Dated: May 14, 2018        /s/ Robert J. Jonker
                           ROBERT J. JONKER
                           CHIEF UNITED STATES DISTRICT JUDGE